UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHEW CPG INC.,

    Plaintiff,

    v.

HIYA HEALTH PRODUCTS, LLC,          CIVIL ACTION NO. 25-12344-MPK[1]

    Defendant,

    and,

UBS FINANCIAL SERVICES INC. and
BANK OF AMERICA, NA,

    Trustee Process Defendants.

MEMORANDUM AND ORDER ON
THE DEFENDANT'S MOTION TO DISMISS (#14)
AND THE PLAINTIFF'S MOTION TO AMEND (#46.)

KELLEY, U.S.M.J.

I. Introduction.

In this case, the Plaintiff, Chew CPG Inc. ("Chew"), sues the Defendant, Hiya Health

Products, LLC ("Hiya"), alleging that Hiya breached the terms of a contract for product

development services and misappropriated Chew's work product for its own benefit, and bringing

a claim for breach of contract (Count I); a claim under Mass. Gen. Laws. ch. 93A (Count II); and

a claim seeking "trustee process attachment" (Count III).  (#1-1 ¶¶ 28-39.)

The court addresses two motions: Hiya's motion to dismiss Chew's complaint (#14) and

Chew's motion to amend its complaint.  (#46).  Hiya opposes amendment.  (#49.)  For the reasons

that follow, Chew's motion to amend is allowed; and Hiya's motion to dismiss, which responds to

Chew's original complaint, is denied as moot.

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including
trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).  (#22.)

II. Procedural Background.

Chew brought suit against Hiya on July 21, 2025, in the Massachusetts Superior Court for Suffolk County. (#1-1.) Hiya removed the matter to this Court on August 22, 2025, on the basis of diversity.[2] (#1 ¶¶ 4-8.) On September 5, 2025, Hiya moved to dismiss Count II of Chew's complaint—Chew's ch. 93A claim—pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (#14.)

Briefing on the motion stretched into late October 2025. *See* ##29, 32. During that time, the parties were engaged in resolving Chew's request for trustee process attachment, and they requested numerous extensions to file a joint status report setting out their progress. *See, e.g.,* ##18, 26, 36, 42. When the parties eventually filed a joint submission on December 8, 2025, they reported the issue resolved. *See supra*, n.2. Less than a month later, on January 6, 2026, and while Hiya's motion to dismiss was still pending, Chew moved to amend its complaint.[3] (#46.)

According to Chew, it seeks to "clarify and augment" its factual allegations and claims "based on additional information and a clearer understanding of the issues involved in this dispute." (#46-1 at 1-2.) Hiya opposes amendment on both timeliness and futility grounds. (#49.)

_____

[2] Before this case's removal, Chew filed an "*Ex Parte* Motion for Trustee Process Attachment" (the "Motion") (#1-4 at 5-15) based on its belief that there was "a clear danger that [Hiya] will withdraw, dissipate, or conceal" funds it maintains with UBS Financial Services Inc. ("UBS") and Bank of America, NA ("BOA"), the Trustee Process Defendants in this case. *Id.* at 9. The Motion remained pending on removal, but Hiya indicated in its notice of removal that Chew's Motion and its claim for "trustee process attachment" against UBS and BOA was "largely moot and resolved" where it had given Chew "assurances that it has the requisite funds available to satisfy any potential claim and that it will keep such funds in an account for the duration of the litigation." (#1 ¶ 13.) In light of this, the court asked the parties to file a status report setting out whether the issue of trustee process attachment had been resolved, *see* #18, and the parties later informed the court in a joint status report that they had "entered into an agreement to resolve the Motion and Chew CPG Inc.'s Trustee Process Claim." (#43 at 1.) In its proposed amended complaint, Chew has excised its claim for trustee process attachment and states that the parties have since "negotiated a resolution" to the issue. (#46-2 ¶ 5.)

[3] Chew originally filed its amended complaint on December 30, 2025, though it later moved to withdraw it and sought leave to file where Hiya had not consented to amendment. *See* ##45, 46-1 ¶ 8. In light of this Order allowing amendment, Chew's motion to withdraw is denied as moot.

2

III. Factual Background.

   A.   Chew's Proposed Amended Complaint ("PAC") (#46-2.)

   In the PAC, Chew again asserts a claim for breach of contract (Count I) and a claim

under ch. 93A (Count II).  *See id.* ¶¶ 37-50.  In proposed Count III, however, Chew has replaced

the "trustee process attachment" claim of its operative complaint, *see* #1-1 ¶¶ 37-39, with one for

quantum meruit.  *See* #46-2 ¶¶ 51-53.  The factual allegations of the PAC, which are accepted as

true for the purpose of assessing the futility of the proposed amendments, *see Efron v. UBS Fin.*

*Servs. Inc. of P.R.*, 96 F.4th 430, 437 (1st Cir. 2024), are as follows.

   1.   The Master Services Agreement ("MSA") and the Statement of Work ("SOW").

   On July 31, 2024, Chew and Hiya entered into an agreement—the MSA—in which Chew,

in exchange for compensation, agreed to provide product development services and to "develop

new and/or modified food and beverage products" that were to be marketed and sold by Hiya.[4]

(#46-2 ¶¶ 6-8).  According to Chew, under the MSA's terms, "the ownership of the work product

developed by Chew, including all tangible property, deliverables and other work product created

by [it]" was to "belong exclusively to [Hiya][,]" though Chew says that any "transfer of ownership"

was "conditioned upon Hiya's payment of compensation."  *Id.* ¶ 28 (additional quotations omitted)

(alterations in original).

   The following day, August 1, 2024, the parties executed a Statement of Work ("SOW")

under which Chew was to "act as Hiya's product development partner and provide research and

---

[4] Chew is a Delaware corporation with a principal place of business in Massachusetts.  *See* ##1-1 ¶ 1, 46-2 ¶ 1.  Hiya is a limited liability corporation organized in Florida with members who are citizens of Utah and California.  (#1 ¶ 7.)  Hiya states, and Chew does not dispute, that UBS and BOA are nominal parties "involved solely to potentially facilitate" Chew's claim for trustee process attachment, *see id.* ¶ 12, an issue which, in any event, the parties have reported as resolved. *See supra*, n.2; *see also Endurance Am. Ins. Co. v. John Moriarty & Assocs., Inc.,* Civil Action No. 1:23-12550-JEK, 2024 WL 3849670, at *2 (D. Mass. Aug. 16, 2024) ("'[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'") (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).

development for products in the children's nutrition space." *Id.* ¶¶ 10.  Chew was to receive $602,640, paid out over monthly installments, in exchange for its work under the SOW, in addition to $48,211.20 "as out of pocket expenses incurred by Chew in connection with the engagement." *Id.* ¶¶ 13, 14 (defined term omitted).

The SOW allowed Hiya to terminate the agreement, as follows:

Hiya reserves the right to terminate this agreement with no penalty after the initial 12-months with a 90-day written notice of cancellation.  Hiya will be responsible for all fees and expenses outlined in this scope that are incurred up to the termination date.

*Id.* ¶ 16 (additional quotations omitted).

2. Hiya, Following its Acquisition, Breaches the SOW.

As Chew alleges, on or about December 23, 2024, it received an email announcing Hiya's acquisition by USANA Health Sciences. *Id.* ¶¶ 18, 20.

That email, which was sent by an individual named Adam Gillman, read, in relevant part:

[w]e wanted to be the first to acknowledge our partners, like you, who made this possible.  AND will continue to help us win everyday going forward.  This relationship has just been formalized and we see it as the perfect partnership to help Hiya continue to grow leaps and bounds everyday.  No quick changes are in play and we plan to keep running our business as is.

*Id.* ¶ 19 (alteration in original).

Despite its acquisition, Chew says that Hiya "assur[ed] [it] of continuity" and continued to ask that it provide research and development services for products in Hiya's children's nutrition line. *Id.* ¶¶ 21, 36.  According to Chew, it "had no reason to suspect that Hiya intended to improperly terminate the SOW[,]" and it continued to faithfully perform its obligations. *Id.* ¶ 22.

On January 9, 2025, however, less than one month after the December 23, 2024 email announcing its acquisition, Hiya communicated verbally, and then the next day in writing, that it sought to terminate the contractual relationship between it and Chew. *Id.* ¶ 23.  As Chew alleges, Hiya ceased payments in January 2025 and "never properly terminated the SOW according to its

4

terms[.]" *Id.* ¶¶ 27, 36.  Consequently, Chew says, "the contractual payments and late fees are continuing to accrue[,]" and it alleges that the total amount owed by Hiya now exceeds $615,004. *Id.* ¶¶ 25-26 & n.1.

3. Hiya Launches a New Product Chew Developed But Was Never Compensated For.

According to Chew, Hiya's attempt to terminate the SOW and its failure to make required payments pursuant to the agreement's terms was "a clear attempt to gain the benefit of Chew's work product without compensation."  *Id.* ¶ 24.  As Chew explains, after Hiya improperly terminated the SOW, it released a new children's hydration and electrolyte powder product Chew says it developed "[i]n the context of and pursuant to the SOW[.]"  *Id.* ¶¶ 29, 31.

Chew says that Hiya "used and relied upon" Chew's contributions, "technical abilities and product specific knowledge" in all phases of development and in bringing the product to market, and it alleges that Hiya intentionally ceased payment under the SOW and "misappropriated [its] work product as defined in the MSA[.]"  *Id.* ¶¶ 32-35; *see id.* ¶ 28.

According to Chew, because of Hiya's non-payment and its breach of the SOW, it (Chew) remains the owner of that work product.  *Id.* ¶ 35.

IV.  Legal Standard.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires[,]" unless the amendment "would be futile, . . . or reward, *inter alia*, undue or intended delay[.]"  *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994) (additional citations omitted).  "Rule 15(a) reflects a liberal amendment policy," *see U.S. ex rel. Gagne v. City of Worcester,* 565 F.3d 40, 48 (1st Cir. 2009) (additional citation omitted), and in deciding whether to permit amendment, "courts must examine the totality of the circumstances and exercise their 'informed discretion in constructing a balance of pertinent considerations.'"  *Insulet Corp. v. EOFlow Co.*, Civil Action No. 23-11780-FDS, 2024 WL 422055, at *1 (D. Mass. Feb. 5, 2024) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31

(1st Cir. 2006)) (additional citation omitted).  Ultimately, a district court enjoys "'significant latitude in deciding whether to grant leave to amend.'"  *Id.* (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008)).

V.  Discussion.

  A.  Undue Delay.

   Hiya first argues that leave to amend should be denied where Chew's delay in seeking it was considerable and without any "specific, valid justification[.]"  (#49 at 1.)

   While it is true that "[a]ppreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend[,]" *see Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (additional citation omitted), Hiya itself acknowledges that the issue nonetheless "turns on the totality of the circumstances[.]"  (#49 at 4.)  From the time this case was removed, and continuing after Hiya filed its motion to dismiss, the parties worked toward resolution of Chew's request for trustee process attachment.  They reported that progress in regular submissions to the court, and Chew, in seeking a lengthy extension to oppose Hiya's motion to dismiss, informed the court that the parties were "in discussions to narrow some of the issues" in the case.  (#20 at 1-2.)  Needless to say, the state of Chew's claims against Hiya appeared fluid.

   When the parties reported the trustee process attachment issue resolved in early December 2025, Chew, less than a month later, sought to amend its existing ch. 93A claim and replace its now-resolved claim in Count III with one for quantum meruit on account of what it explains was "additional information and a clearer understanding of the issues[.]"  (#46-1 at 1-2.)  Hiya points out that Chew sought leave "only after [Hiya's] motion to dismiss was fully briefed and under advisement," but, in opposing amendment on futility grounds, Hiya has simply lifted many of the same arguments it makes in its pending motion to dismiss—arguments which this court had not yet decided—into that of its briefing opposing amendment.  (#49 at 5).  No answer has been filed, no schedule has been set, and no discovery has been taken in this case.  *Compare Calderon-Serra*,

6

715 F.3d at 20 (leave to amend was appropriately denied on grounds of undue delay where a party previously amended its complaint and then proposed further amendment "nearly a year after commencement of the action").  As Chew puts it, "there has been no substantive action in this case" and, given the scope of the proposed amendments, the parties "will be taking discovery on and litigating essentially the same facts, predicated on the same relationship alleged in the Complaint."  (#46-1 ¶¶ 6, 13.)

The circumstances in this case do not support denial on the grounds of undue delay.

B.  Futility.

Finally, Hiya argues that Chew's proposed amended claims, Counts II and III,[5] are futile where Chew alleges nothing more than an "ordinary contract dispute" in its claim under ch. 93A and where its claim for quantum meruit is not an independent cause of action.  *See* #49 at 1-2.

Futility "means that 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 40 (1st Cir. 2022) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  Thus, futility is "'gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'"  *Id.* (quoting *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013)); *see A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (in evaluating a motion to dismiss under Rule 12(b)(6), the court assumes the truth of all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor).

1. "Massachusetts General Laws Chapter 93A" (Count II).

In Count II of the PAC, Chew alleges that by "misrepresenting its intentions" following its acquisition, "continuing to solicit Chew's services, and then misappropriating Chew's proprietary formulations for commercial gain," Hiya "engaged in unfair and deceptive practices" in violation

---

[5] Hiya clarifies that its opposition is limited to Chew's "proposed substantive amendments, including the amended Chapter 93A claim and the new quantum meruit claim."  (#49 at 1 n.1.)

of Mass. Gen. Laws ch. 93A, § 11.  (#46-2 ¶¶ 43-49, 50.)

According to Hiya, however, Chew's ch. 93A claim fails where Chew does not plead "something more" than an ordinary breach of contract, where it fails to plead with particularity, and where it fails to plead conduct "primarily and substantially" in Massachusetts.  (#49 at 6-9.)

a. Chapter 93A – Generally.

Mass. Gen. Laws ch. 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  Mass. Gen. Laws ch. 93A, § 2(a).  The statute provides a cause of action to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two[.]"  Mass. Gen. Laws ch. 93A, § 11.

A claim under § 11 has three elements:

(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered.

*Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021) (citing *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074-75 (Mass. 2014)).

"[U]nfair or deceptive conduct is best discerned 'from the circumstances of each case[,]'" *see id.* at 17 (additional citations omitted), and in determining what conduct "rises to the level of an unfair act or practice[,]" courts have "consistently" looked to:

(1) whether the conduct is within 'at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers' or other businesses[.]

*H1 Lincoln, Inc. v. South Washington Street, LLC*, 179 N.E.3d 545, 557 (Mass. 2022) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.,* 321 N.E.2d 915, 917 (Mass. 1975)) (second alteration in original) (additional quotations omitted).  The "'crucial factors' in an unfairness inquiry are 'the

nature of [the] challenged conduct and [] the purpose and effect of that conduct." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184-85 (1st Cir. 2009) (quoting *Mass. Employers Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995)) (additional citation omitted) (first alteration in original).

  b. <u>"Something More" than Breach of Contract.</u>

  Hiya argues that Chew "frames the dispute as a disagreement over termination and payment under the [SOW][,]" allegations which Hiya says do not meet the requirements of a claim under ch. 93A.  (#49 at 6-7.)  Chew's allegations, according to Hiya, "merely describe contractual performance, nonpayment, and a disagreement over contractual ownership rights[,]" and "'something more,' such as conduct with an extortionate or coercive quality" is needed to transform what is otherwise an ordinary claim for breach of contract into one under ch. 93A.  *Id.*

  "Not just any breach of contract is sufficient to constitute an unfair or deceptive trade practice under Chapter 93A"; rather, "the breach must be both knowing and intended to secure unbargained-for benefits to the detriment of the other party." *Wagner v. Fed. Home Loan Mortg. Corp.*, 494 F. Supp. 3d 80, 87 (D. Mass. 2020) (citing *City of Revere v. Boston/Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200, 209 (D. Mass. 2005)) (additional quotations and citation omitted); *see Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 9 F. Supp. 2d 49, 68-69 (D. Mass. 1998) ("[T]he theme of the cases in which a breach of contract has amounted to a 93A violation is 'the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party[.]'") (quoting *Atkinson v. Rosenthal*, 598 N.E.2d 666, 670 (Mass. App. Ct. 1992)) (collecting cases); *see also Whitman & Co. Inc. v. Longview Partners (Guernsey) Ltd.,* Civil Action No. 14-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. June 16, 2015), *report and recommendation adopted,* 2015 WL 4467064 (D. Mass. July 20, 2015) (recognizing that "[i]n those cases where courts have found Chapter 93A violations arising out of a breach of contract, additional services or advantages were wrestled from the aggrieved party

through false promises") (collecting cases).

Chew says that Hiya, following its acquisition in December 2024, "assur[ed] Chew of continuity" and asked that it continue to provide its services, yet soon after reversed course, attempting to terminate the SOW, and eventually breaching it, by ceasing its payments and bringing a new product to market which Chew developed but was never compensated for. *See* #46-2 ¶¶ 18-21, 23-24, 27, 36. Chew specifically alleges that Hiya's actions were made "with the intent of misleading Chew" and carried out in "a clear attempt to gain the benefit of Chew's work product without compensation." *Id.* ¶¶ 24, 43. Moreover, Chew claims that Hiya intentionally stopped making payments and used "its considerable economic leverage and advantage" to "usurp" and "misappropriat[e]" Chew's "proprietary formulations for commercial gain" after having used and relied on Chew's technical abilities and its marketing assistance to develop a unique product and prepare it for market launch. *Id.* ¶¶ 24, 29, 31-35, 48, 50.

The court agrees that these allegations "transcend[] mere breach of contract" and are sufficient, at this early stage in the case, to make out a plausible claim under ch. 93A.[6] *Id.* ¶ 50. *See Sensitech Inc. v. Limestone FZE,* 548 F. Supp. 3d 244, 259 (D. Mass. 2021) (distributor's allegations that its former customer had wrongfully terminated the parties' distribution agreement and thereafter "misappropriat[ed]" the regional customer network the distributor had itself worked to establish stated a "colorable claim for a Chapter 93A violation").

---

[6] Hiya also argues that Chew's ch. 93A claim, to the extent it sounds in fraud or deception, fails where the allegations supporting it do not satisfy the heightened pleading standard called for by Fed. R. Civ. P. 9(b). (#49 at 8.) *See Mulder v. Kohl's Dep't Stores, Inc.,* 865 F.3d 17, 21 (1st Cir. 2017) (noting that Rule 9(b)'s requirements apply to claims under ch. 93A sounding in fraud). Hiya argues that the PAC contains no allegations with respect to "particularized misrepresentations that satisfy the 'who, what, when, where, and how' standard" called for by Rule 9(b). (#49 at 8.) Chew, however, does identify a specific communication—the Gillman email—it received from Hiya just weeks before Hiya attempted to terminate the SOW in which Hiya allegedly misrepresented its intent to continue working with Chew, stating that the company would make "'[n]o quick changes'" and representing that it "'plan[ned] to keep running [its] business as is.'" (#46-2 ¶¶ 18-19.) Contrary to Hiya's assertion, Chew identifies in detail who made that communication, what that communication said, when it was said, and how it was sent. *See id.*

c. <u>"Primarily and Substantially" Within Massachusetts.</u>

Finally, Hiya argues that Chew's proposed ch. 93A claim fails where Chew "does not adequately plead a Massachusetts nexus." (#49 at 8.)

Pursuant to Mass. Gen. Laws ch. 93A, § 11, the alleged unfair or deceptive act "must occur 'primarily and substantially within the Commonwealth.'" *Whitman & Co. Inc.*, 2015 WL 4467064, at *11 (quoting Mass. Gen. Laws ch. 93A, § 11).

Hiya claims that although Chew alleges that it operates in Massachusetts, that it "felt economic harm here," and that Hiya contracted with it (Chew, a Massachusetts company), the PAC nonetheless "fails to include specific allegations regarding where the center of gravity of Hiya's purportedly wrongful conduct occurred." (#49 at 8-9) (emphasis omitted). It is Hiya, however, that bears the burden of proof of showing that the transaction at issue "did not occur primarily and substantially within [Massachusetts][,']" something it does not attempt in its briefing. Mass. Gen. Laws ch. 93A, § 11; *see Whitman & Co. Inc.*, 2015 WL 4467064, at *11 ("The burden of proof is upon the person claiming that the transaction did not occur in the Commonwealth.") (citing Mass. Gen. Laws ch. 93A, § 11).

Moreover, and of particular importance at this juncture, "'[w]hether the actions and transactions occurred primarily and substantially within the commonwealth is not a determination that can be reduced to any precise formula.'" *Id.* (describing "'center of gravity'" test and the requirement that a court make factual findings for later consideration in the proper context) (quoting *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 799 (Mass. 2003)) (additional quotations omitted). Consequently, the issue "is highly factual" and "not generally the appropriate subject for a motion to dismiss." *Id.* (collecting cases).

Leave to amend is allowed as to Chew's proposed Count II.

2. "Quantum Meruit" (Count III).

Leave to amend will be allowed with regard to Chew's proposed Count III, "Quantum Meruit," as well.  Chew alleges that where Hiya improperly terminated the SOW, ceased payment, and later sold a product Chew developed without paying the company for its efforts, Hiya owes Chew "fair compensation for the work product it provided to Hiya for which Chew was not paid in accordance with the terms of the SOW."  (#46-2 ¶¶ 52-53.)

In opposing amendment, Hiya argues that amendment is futile where Chew's proposed quantum meruit claim "is not a viable cause of action."  (#49 at 9.)  Quantum meruit is, however, a theory of recovery.  *See Guldseth v. Family Med. Assocs. LLC*, 45 F.4th 526, 540 n.13 (1st Cir. 2022) (additional citation omitted).  "To establish a claim for quantum meruit[,]" a plaintiff must show "(1) that [it] 'conferred a measurable benefit upon' [defendant]; (2) that [it] 'reasonably expected compensation from' [defendant]; and (3) that [defendant] 'accepted the benefit with the knowledge, actual or chargeable, of [plaintiff's] reasonable expectation.'"  *Id.* at 540 (quoting *Finard & Co., LLC v. Sitt Asset Mgmt.*, 945 N.E.2d 404, 407-08 (Mass. App. Ct. 2011)).

While the existence of "a valid contract that covers the same subject matter and defines the obligations of the parties" will preclude recovery under a theory of quantum meruit, *see id.* at 541 (collecting cases), the merits of Chew's breach of contract claim (Count I) have not been tested, and the validity of the SOW is not at issue.  At this early stage, Chew may seek recovery in quantum meruit and plead in the alternative.  *See Harmony Healthcare Int'l, Inc. v. TLC of the Bay Area, Inc.*, Civil Action No. 23-10346-RGS, 2023 WL 3766057, at *2 (D. Mass. June 1, 2023) ("[U]nder Massachusetts law and the Federal Rules of Civil Procedure a plaintiff may assert breach of contract and quantum meruit claims together at the pleading stage.") (additional citations omitted); *see also Backman v. Smirnov,* 751 F. Supp. 2d 304, 314 (D. Mass. 2010).

VI.  <u>Conclusion.</u>

For the above reasons, Chew's motion to amend (#46) is allowed, and Hiya's motion to dismiss (#14) is denied as moot.  Hiya shall file its response to Chew's amended complaint (#44) within fourteen (14) days of this Order.

April 29, 2026                                             /s/ M. Page Kelley
                                                          M. Page Kelley
                                                          United States Magistrate Judge